*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1566**

State of Minnesota,
Respondent,

vs.

Amanda Lee Jensrud,
Appellant.

**Filed June 10, 2024**
**Reversed and remanded**
**Johnson, Judge**

Anoka County District Court
File No. 02-CR-19-4070

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brad Johnson, Anoka County Attorney, Kelsey R. Kelley, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Johnson, Presiding Judge; Harris, Judge; and Reilly, Judge.[*]

―――――――――――――――

        [*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JOHNSON**, Judge

Amanda Lee Jensrud was placed on probation after she pleaded guilty to a drug-related offense. The district court later revoked Jensrud's probation and executed her prison sentence after she admitted to violating multiple conditions of her probation. We conclude that the district court erred when revoking Jensrud's probation by not making adequate findings concerning why the need for confinement outweighs the policies favoring probation. We also conclude that the district court erred in its calculation of Jensrud's criminal-history score. Therefore, we reverse and remand.

## FACTS

In June 2019, police officers found approximately 268 grams of methamphetamine in Jensrud's home. The state charged Jensrud with first-degree controlled substance crime, in violation of Minn. Stat. § 152.021, subd. 2(a)(1) (2018). Two months later, Jensrud and the state entered into a plea agreement. Jensrud agreed to plead guilty to the charged offense, and the state agreed to dismiss charges in another case.

The parties also agreed that Jensrud should be released pending sentencing so that she could participate in an in-patient drug-treatment program. Between August 2019 and June 2020, the district court furloughed Jensrud to treatment three times, but she absconded at least twice. In addition, Jensrud did not appear for sentencing in October 2020.

Jensrud was apprehended in December 2020. The district court conducted a sentencing hearing in March 2021. Before the hearing, Jensrud filed a motion for a downward dispositional departure. The state did not oppose the motion. The district court

granted Jensrud's motion and imposed a sentence of 150 months of imprisonment, stayed execution of the sentence, and placed her on supervised probation, subject to several conditions.

Four months later, in July 2021, Jensrud's probation officer filed a report alleging that Jensrud violated conditions of her probation by not submitting to chemical testing since sentencing, by having no contact with her probation officer, and by not informing her probation officer of her whereabouts. In December 2021, Jensrud's probation officer filed another report alleging that Jensrud violated conditions of her probation by not being in contact with her probation officer and not providing her probation officer with contact information. At a probation-violation hearing in January 2023, the parties agreed that, if Jensrud admitted the alleged violations, the district court should order an intermediate sanction of one year in jail and that, after 60 days, Jensrud should be eligible for a furlough to an in-patient treatment facility. The parties further agreed that, upon her successful completion of the in-patient treatment program, Jensrud should be eligible to serve the remainder of the jail term on electronic home monitoring, with a condition that she submit to random drug tests. The district court approved the agreement and ordered the intermediate sanction.

Four months later, in May 2023, Jensrud's probation officer filed a probation-violation report alleging that Jensrud had twice tested positive for amphetamines and, when told to report to the workhouse, removed her electronic-home-monitoring bracelet and absconded. Two months later, Jensrud's probation officer filed another probation-violation

3

report alleging that Jensrud had been charged and convicted of a new criminal offense and admitted to using a controlled substance.

The district court conducted a probation-revocation hearing in July 2023. Jensrud admitted the alleged violations. The district court revoked her probation and executed her 150-month prison sentence. Jensrud appeals.

## DECISION

### I. Revocation of Probation

Jensrud first argues that the district court erred by not making adequate findings concerning the reasons for revoking her probation.

If a person violates one or more conditions of probation, a district court may either continue the person on probation or revoke probation and execute the underlying sentence. Minn. Stat. § 609.14 (2018); *see also* Minn. R. Crim. P. 27.04, subd. 3(2)(b)(iv)-(v). The supreme court has prescribed a three-step analysis to guide district courts in determining whether to revoke probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). A district court may revoke probation only if the court (1) designates the specific conditions of probation that have been violated, (2) finds that the violations were "intentional or inexcusable," and (3) finds "that need for confinement outweighs the policies favoring probation." *Id.* In making these findings, a district court "must seek to convey [its] substantive reasons for revocation and the evidence relied upon." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). This court applies a *de novo* standard of review to the adequacy of a district court's findings and an abuse-of-discretion standard of review to a district court's ultimate decision to revoke probation. *Id.* at 605.

Jensrud challenges the district court's findings only with respect to the third *Austin* factor: that the "need for confinement outweighs the policies favoring probation." *See Austin*, 295 N.W.2d at 250. A district court may find that the third *Austin* factor is satisfied if it finds that any of three sub-factors are present: (1) "'confinement is necessary to protect the public from further criminal activity by the offender,'" (2) "'the offender is in need of correctional treatment which can most effectively be provided if he is confined,'" or (3) a further stay of the sentence "'would unduly depreciate the seriousness of the violation.'" *Id.* at 251 (quoting A.B.A. Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970)).

In this case, the district court stated the following reasons for revoking Jensrud's probation:

> I still recall when we initially met each other, with your other attorney, and you had described what you had been through and your life. And as [Jensrud's attorney] indicates, addiction is a horrible, horrible thing. And I was giving you that opportunity at that time, and, you know, it didn't work and you came back again. And I gave you an opportunity at that point. And in my mind, I can't even see the difference between what I had done the last time, which was basically a year in the county jail. I was giving you a break by allowing you to do it on home electronic monitoring. But I have a responsibility, and I take that responsibility very seriously. In my mind, I understand that I've tried and I know you've tried and now we've got to look at something else.

> And so with that, as indicated, this Court finds that the violations are willful, intentional, and without lawful excuse. In addition, this Court finds that the need for confinement outweighs the policy favoring probation. That confinement is appropriate and necessary to protect the public from further criminal activity. That Ms. Jensrud is in need of correctional treatment which can most effectively be provided if she is

5

confined, and that the need to revoke your probation to show the severity, the seriousness, of the violation depreciates if not confined.

Jensrud contends that the district court's findings are inadequate because they do not provide a "substantive, case-specific" reason why the need for confinement outweighs the policies favoring probation or "an explanation of the evidence" on which the district court relied when making that determination. She cites *Modtland* for the proposition that a district court's findings are inadequate if a district court merely "recit[es] the three factors and offer[s] general, non-specific reasons for revocation." 695 N.W.2d at 608.

Jensrud is correct. The district court's findings do not satisfy the requirements of *Modtland* because they do not reveal any case-specific reasons why the need for confinement outweighs the policies favoring probation or why any of the three sub-factors are present. In the second paragraph quoted above, the district court merely recited the three *Austin* factors and the related sub-factors. The first paragraph quoted above consists of reasonably specific, case-related statements, but none of them relate to the third *Austin* factor or the three sub-factors. The district court did not make adequate case-specific findings to support its conclusions.

Notably, the state does not contend that the findings are adequate. Rather, the state contends only that the findings are "thoroughly supported by the record." We do not doubt the adequacy of the record. But that is not relevant to our inquiry. The supreme court has stated that "it is not the role of appellate courts to scour the record to determine if sufficient evidence exists to support the district court's revocation." *Modtland*, 695 N.W.2d at 608. Rather, appellate courts seek to ensure that district courts "create thorough, fact-specific

6

records setting forth their reasons for revoking probation." *Id.* In this case, such reasons are lacking.

Thus, the district court erred by not making adequate findings concerning the third *Austin* factor. Therefore, we reverse and remand for further proceedings.

## II. Criminal-History Score

Jensrud also argues that the district court erred in its calculation of her criminal-history score.

In a felony case, a defendant's presumptive sentence is determined by the severity of the present offense and the defendant's criminal-history score. Minn. Sent'g Guidelines 2 (Supp. 2019). A criminal-history score is the "sum of points" that are assigned for, among other things, prior felony convictions and prior juvenile adjudications. Minn. Sent'g Guidelines 2.B. The number of criminal-history points assigned to a prior felony conviction depends on the severity level of the prior offense. Minn. Sent'g Guidelines 2.B.1. Generally, "the offender is assigned a particular weight for every felony conviction for which a felony sentence was stayed or imposed before the current sentencing." Minn. Sent'g Guidelines cmt. 2.B.101.

Jensrud argues that the district court erred in two ways.

## A.

Jensrud first argues that the district court erred by applying the 2018 sentencing guidelines on the ground that, under the amelioration doctrine, the more-lenient 2019 guidelines apply.

"The amelioration doctrine applies an amendment mitigating punishment to acts committed prior to that amendment's effective date, if there has not been a final judgment reached in the case." *State v. Robinette*, 964 N.W.2d 143, 146 (Minn. 2021); *see also State v. Kirby*, 899 N.W.2d 485, 489 (Minn. 2017); *State v. Otto*, 899 N.W.2d 501, 503 (Minn. 2017). The amelioration doctrine is grounded in the principle that if the legislature has amended a statute to mitigate criminal punishment, "the legislature has manifested its belief that the prior punishment is too severe and a lighter sentence is sufficient." *State v. Coolidge*, 282 N.W.2d 511, 514 (Minn. 1979). As a consequence, "Nothing would be accomplished by imposing a harsher punishment, in light of the legislative pronouncement, other than vengeance." *Id.* at 514-15. A defendant whose criminal case has not yet reached final judgment may receive the benefit of the new, more lenient law, so long as there is no "contrary statement of intent by the legislature." *Edstrom v. State*, 326 N.W.2d 10, 10 (Minn. 1982).

Jensrud contends that the district court should have applied the 2019 sentencing guidelines because of revisions concerning conviction-decay and custody-status points. *See* Minn. Sent'g Guidelines 2.B.1.c, 2.B.2.a. She asserts that applying the 2019 version of the guidelines would result in a lower criminal-history score and, accordingly, a shorter presumptive sentence. The state concedes that the amelioration doctrine applies and that Jensrud is entitled to be sentenced under the 2019 guidelines. We accept the state's concession. Accordingly, we conclude that the district court erred by applying the 2018 sentencing guidelines, and we reverse and remand for resentencing under the 2019 sentencing guidelines. *See Robinette*, 964 N.W.2d at 151.

**B.**

Jensrud also argues that the district court erred by assigning her two criminal-history points for a prior federal conviction for conspiracy to distribute marijuana.

In determining whether to assign criminal-history points for a prior non-Minnesota conviction, a district court first must identify "the equivalent Minnesota offense based on the elements of the prior non-Minnesota offense" and then must assign criminal-history points accordingly. Minn. Sent'g Guidelines 2.B.5.b. A district court should identify the equivalent Minnesota offense by considering whether the non-Minnesota offense "is defined as a felony, gross misdemeanor, or targeted misdemeanor in Minnesota" and by examining "the sentence imposed." *Id.* The district court should seek to "comply with the sentencing guidelines' mandate that the court determine how the offender would have been sentenced had the offense occurred in Minnesota at the time of the current offense, not when the offense actually occurred." *State v. Reece*, 625 N.W.2d 822, 825 (Minn. 2001). The state bears the burden of proving the facts necessary to include a non-Minnesota conviction in a defendant's criminal-history score. *Williams v. State*, 910 N.W.2d 736, 743 (Minn. 2018). This court applies an abuse-of-discretion standard of review to a district court's assignment of criminal-history points based on a non-Minnesota conviction. *Reece*, 625 N.W.2d at 825.

Jensrud did not raise this particular issue in the district court. Nonetheless, a defendant may argue for the first time on appeal that the state did not satisfy its burden of proving the facts that support a criminal-history score. *See State v. Strobel*, 932 N.W.2d 303, 305-06 (Minn. 2019); *State v. Scovel*, 916 N.W.2d 550, 553 n.5 (Minn. 2018); *State*

9

*v. Maurstad*, 733 N.W.2d 141, 148 (Minn. 2007). If a defendant makes such an argument for the first time on appeal, this court must examine the record to determine whether it contains evidence supporting the district court's calculation of criminal-history points. *See State v. Maley*, 714 N.W.2d 708, 711-12 (Minn. App. 2006). If we determine that the state did not satisfy its burden of proof because the appellant did not challenge the assignment of criminal-history points at the time of sentencing, the case should be reversed and remanded, and the state should be permitted on remand to "develop the sentencing record so that the district court can appropriately make its determination." *State v. Outlaw*, 748 N.W.2d 349, 356 (Minn. App. 2008), *rev. denied* (Minn. July 15, 2008).

In this case, the record does not contain any evidence concerning Jensrud's prior federal conviction. Consequently, the state did not satisfy its burden of proof. It appears that the evidence is lacking because Jensrud did not object to the assignment of criminal-history points for the prior federal conviction. The state is entitled to an opportunity to introduce evidence that would satisfy its burden of proving the facts necessary to include a non-Minnesota conviction in a defendant's criminal-history score.

Thus, the district court erred by assigning Jensrud two criminal-history points for the prior federal conviction. Therefore, we reverse and remand for further proceedings and for resentencing.

**Reversed and remanded.**