ANDERSON, Justice.
This case presents the question of whether the classification of a prior offense for the purpose of calculating a defendant's criminal history score is determined by the Minnesota offense definitions and sentencing policies in effect when the defendant committed the current offense or when the defendant is sentenced for the current offense. Under the Minnesota Sentencing Guidelines, "[t]he classification of a prior offense as a ... felony is determined by current Minnesota offense definitions ... and sentencing policies." Minn. Sent. Guidelines 2.B.7.a (2015). In other words, this case requires us to decide whether the Minnesota Sentencing Guidelines Commission used the word "current" in Guidelines 2.B.7.a to mean "at the time the defendant *552 committed the current offense" or "at the time the defendant is sentenced for the current offense."
In 2007, appellant Keith Scovel was convicted of fifth-degree possession of a controlled substance. When Scovel committed the current offense in March 2016, fifth-degree possession of a controlled substance was a felony offense. When he was sentenced in September 2016, however, fifth-degree possession of a controlled substance had been reclassified by the Legislature to a gross misdemeanor offense under certain circumstances. In calculating Scovel's criminal history score, the district court counted the 2007 conviction as a felony. On appeal, Scovel argued that the court had miscalculated his criminal history score, asserting that defendants can receive felony criminal history points only for prior felony convictions that are still classified as felony-level crimes at the time of sentencing. The court of appeals rejected this argument. Because we conclude that the phrase "current Minnesota offense definitions ... and sentencing policies" in Guidelines 2.B.7.a means Minnesota offense definitions and sentencing policies in effect when the current Minnesota offense was committed, we affirm.
FACTS
Although this appeal arises out of Scovel's current offense, the story begins almost a decade earlier when he committed the prior offense. There are four significant dates that are relevant here: 2007 (Scovel commits the prior offense); March 2016 (Scovel commits the current offense); August 1, 2016 (the effective date of the Legislature's reclassification of certain fifth-degree possession offenses from a felony to a gross misdemeanor); and September 2016 (sentencing on the current offense).
In 2007, Scovel pleaded guilty to fifth-degree possession of a controlled substance (2007 felony conviction), Minn. Stat. § 152.025, subds. 2-3 (2006).[1] This was his first controlled-substance-related conviction. He initially received a stay of imposition, but after violating probation, the district court resentenced him to 1 year and 1 day in prison. This was, and is, a felony-level sentence. See Minn. Stat. § 609.02, subd. 2 (2016) (defining "felony" as "a crime for which a sentence of imprisonment for more than one year may be imposed"); Minn. Stat. § 609.02, subd. 2 (2006) (same).
Nearly a decade later-based on conduct that occurred in March 2016-the State of Minnesota charged Scovel with first-degree sale of a controlled substance (the current offense), Minn. Stat. § 152.021, subd. 1 (2014). Ultimately, the parties reached a plea agreement in which Scovel would plead guilty to an amended charge of second-degree sale of a controlled substance, Minn. Stat. § 152.022, subd. 1(1) (2014), and receive a 70-month presumptive sentence based on a criminal history score of 2.
After Scovel committed the current offense, but before he was convicted and sentenced, the 2016 Drug Sentencing Reform Act (DSRA) was enacted. See Act of May 22, 2016, ch. 160, 2016 Minn. Laws 576. Notably, under section 7 of the DSRA, fifth-degree sale of a controlled substance remains a felony, but some first-time fifth-degree possession offenses are now classified as gross misdemeanors. Id. at 583-85 (codified at *553 Minn. Stat. § 152.025 (2016) ).[2] The legislation specified that "[t]his section is effective August 1, 2016, and applies to crimes committed on or after that day." Id. at 585.
One month later, on September 7, 2016, Scovel pleaded guilty as planned. The district court accepted his guilty plea and sentenced him to 70 months in prison, expressly noting that this sentence was "based on a criminal history score of 2." Specifically, the court assigned Scovel 1 point for his prior misdemeanors and gross misdemeanors; it also assigned him 0.5 felony points for his prior 2007 felony conviction and another 0.5 felony points for his prior 2012 felony conviction, for a total of 1 point.[3] Significantly, then, the court considered Scovel's 2007 prior offense to be a qualifying felony, even though the Legislature had since reduced the severity of the offense to a gross misdemeanor.
Under the Minnesota Sentencing Guidelines, "[a] defendant's criminal history score is calculated, in part, by allotting 'points' for each of a defendant's prior convictions for which a felony sentence was imposed." State v. Williams , 771 N.W.2d 514, 521 (Minn. 2009) (quoting Minn. Sent. Guidelines II.B.1 (2008) ). Guidelines 2.B.7, in particular, describes how to "determin[e] offense levels for prior offenses." It states that "[t]he classification of a prior offense as a petty misdemeanor, misdemeanor, gross misdemeanor, or felony is determined by current Minnesota offense definitions (see Minn. Stat. § 609.02, subds. 2-4a ) and sentencing policies." Minn. Sent. Guidelines 2.B.7.a (2015).[4]
At the time of sentencing, Scovel did not contest his criminal history score. But on appeal, Scovel argued that his criminal history score was miscalculated.[5] According to Scovel, he should not have been assigned 0.5 points for his 2007 fifth-degree controlled-substance conviction because, at the time he was sentenced, the crime had been reduced to a gross misdemeanor as part of the DSRA. This reduction is meaningful: If the 2007 felony conviction had been treated as a gross misdemeanor for criminal-history-score purposes, the presumptive range would have been reduced from 58 to 81 *554 months to 50 to 69 months.[6] The court of appeals concluded that Scovel was "not entitled to a reduction in his criminal history score" and affirmed in relevant part. State v. Scovel , No. A16-1931, Order Op. at 3, 5 (Minn. App. filed Oct. 19, 2017). We granted review to decide whether Scovel's 2007 felony conviction was properly counted as a qualifying felony for criminal history purposes.
ANALYSIS
The key provision at issue here is Minn. Sent. Guidelines 2.B.7.a, which addresses the classification of prior offenses for criminal history purposes. Guidelines 2.B.7.a provides, in relevant part:
7. Determining Offense Levels for Prior Offenses.
a. Classification of Prior Offense. The classification of a prior offense as a petty misdemeanor, misdemeanor, gross misdemeanor, or felony is determined by current Minnesota offense definitions (see Minn. Stat. § 609.02, subds. 2-4a ) and sentencing policies.
The parties each claim that this provision unambiguously supports their respective arguments. Scovel maintains that "[t]he Guidelines are clear" that the district court assigns felony criminal history points only for offenses that are felonies "at the time of sentencing" (here, September 2016). The State, on the other hand, argues that the Guidelines "clearly" dictate that the controlling date for the prior-offense-classification inquiry is "the time the current offense was committed" (here, March 2016).[7]
Interpreting the Minnesota Sentencing Guidelines presents a question of law, which we review de novo. State v. Washington , 908 N.W.2d 601, 606 (Minn. 2018). When we interpret the Guidelines, we use the same principles as when interpreting statutes, including the canons of interpretation in Minn. Stat. § 645.08 (2016). Id. at 608. If the Guidelines language *555 is plain and unambiguous, it is presumed to manifest the intent of the Minnesota Sentencing Guidelines Commission (the Commission). See State v. Campbell , 814 N.W.2d 1, 4 (Minn. 2012). Only if the language is "subject to more than one reasonable interpretation" will we "look to other factors to determine" the Commission's intent. Id. at 4-5.
We read the Guidelines "as a whole and interpret each section in light of the surrounding sections." State v. Kirby , 899 N.W.2d 485, 493 (Minn. 2017). "When there is an apparent conflict between two provisions, we first attempt to construe the provisions to give effect to both." State v. Jones , 848 N.W.2d 528, 537 (Minn. 2014). Additionally, we strive for an interpretation that is consistent with the comments to the Guidelines, but the comments are merely advisory, not binding. See id. at 538.
The Guidelines do not define the word "current," see Minn. Sent. Guidelines 1.B, which prompts us to consult dictionary definitions to ascertain its meaning, Washington , 908 N.W.2d at 607. "Current" means "[b]elonging to the present time" or "[b]eing in progress now." The American Heritage Dictionary of the English Language 446 (5th ed. 2011). Applying this definition would mean that when the sentencing court classifies a prior offense for criminal history purposes, it is to base its decision on the offense definitions and sentencing policies in effect at "the present time"-i.e., at the time of sentencing the current offense. This interpretation is reasonable on its face. See Minn. Stat. § 645.08(1) ("[W]ords and phrases are construed according to ... their common and approved usage....").
But as Judge Learned Hand observed, the dictionary is not foolproof or failsafe. See Cabell v. Markham , 148 F.2d 737, 739 (2d Cir. 1945) ("[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary...."). Here, there is another reasonable interpretation of "current" under the whole-statute canon, which is a pre-ambiguity canon. See State v. Prigge , 907 N.W.2d 635, 640 (Minn. 2018). Under the whole-statute canon, "we read [the Guidelines] as a whole and interpret each section in light of the surrounding sections," Kirby , 899 N.W.2d at 493, in an effort "to avoid conflicting interpretations," State v. Struzyk , 869 N.W.2d 280, 287 (Minn. 2015). It is not unusual to set aside dictionary definitions when context makes clear that dictionary definitions may not fit. See City of Brainerd v. Brainerd Invs. P'ship , 827 N.W.2d 752, 760 (Minn. 2013) ("[W]e must not look simply at a dictionary definition.... Instead, we must assess whether applying the dictionary definition makes sense in context."); see, e.g. , Campbell , 814 N.W.2d at 5 (concluding that the Guidelines phrase "another offense" had two reasonable interpretations without consulting dictionary definitions of "another" or "offense").
Here, other provisions in Guidelines 2.B, the section governing a defendant's criminal history score, suggest another reasonable interpretation of "current." In addition to Guidelines 2.B.7.a, which addresses how to classify prior offenses, Guidelines 2.B.5.b addresses how to classify out-of-state prior offenses in particular:
An offense may be counted as a felony only if it would both be defined as a felony in Minnesota, and the offender received a sentence that in Minnesota would be a felony-level sentence.... The offense definitions in effect when the offense was committed govern the designation of non-Minnesota convictions as felonies, gross misdemeanors, or misdemeanors.
*556 (Emphasis added.) In fact, comment 2.B.502, which accompanies Guidelines 2.B.5.b, mirrors nearly word-for-word the language in 2.B.7.a:
Generally, the classification of prior offenses as petty misdemeanors, misdemeanors, gross misdemeanors, or felonies should be determined by current Minnesota offense definitions and sentencing policies....
Minn. Sent. Guidelines cmt. 2.B.502 (emphasis added). Compare id. , with Minn. Sent. Guidelines 2.B.7.a ("The classification of a prior offense as a petty misdemeanor, misdemeanor, gross misdemeanor, or felony is determined by current Minnesota offense definitions (see Minn. Stat. § 609.02, subds. 2-4a ) and sentencing policies.").
The fact that comment 2.B.502 explains, or reiterates, the meaning of Guidelines 2.B.5.b suggests that "current" is shorthand for "in effect when the [current Minnesota] offense was committed."[8] See Minn. Sent. Guidelines 2.B.5.b. Put another way, because comment 2.B.502 uses "current" in a way that paraphrases, and is meant to be consistent with, Guidelines 2.B.5.b's phrase "when the [current Minnesota] offense was committed," the word "current" in comment 2.B.502's sister provision, Guidelines 2.B.7.a, also should carry that same meaning.
Under the whole-statute canon, we are required to interpret Guidelines 2.B.7.a in light of both Guidelines 2.B.5.b and comment 2.B.502. See Campbell , 814 N.W.2d at 5 ("Our interpretation of Minn. Sent. Guidelines 2.F.2. is guided by the context of that section and the Minnesota Sentencing Guidelines as a whole.").
In sum, after considering the dictionary definition and the surrounding Guidelines provisions, we are left with two reasonable interpretations of the word "current" in Guidelines 2.B.7.a: (1) "now," as in "at the time of sentencing the current offense," or (2) "at the time the current offense was committed," which is how "current" is used in Guidelines 2.B.5.b and comment 2.B.502. See Campbell , 814 N.W.2d at 5 (concluding that a Guidelines provision was ambiguous based on two reasonable interpretations of the phrase at issue).
When a provision in the Guidelines is ambiguous, we may consider "the circumstances under which [the provision] was enacted" as well as "the former law." Minn. Stat. § 645.16(2), (5) (2016). The history and evolution of Guidelines 2.B.7.a[9] demonstrates that this provision has its roots in Guidelines 2.B.5, which favors interpreting *557 Guidelines 2.B.7.a's use of the word "current" to be consistent with the use of the word "current" in comment 2.B.502 and Guidelines 2.B.5.b. We also observe that the predecessors to Guidelines 2.B.7 have been repeatedly amended to align with the analogous provisions and comments in Guidelines 2.B.5,[10] so it makes sense to interpret Guidelines 2.B.7.a in light of Guidelines 2.B.5.b.
In addition to the former law, we may consider the subsequent law and its legislative history. See Mill City Heating & Air Conditioning Co. v. Nelson , 351 N.W.2d 362, 365 (Minn. 1984).[11] Guidelines 2.B.5.b was recently amended in 2016 to add the words "current Minnesota" before "offense." Compare Minn. Sent. Guidelines 2.B.5.b (2015), with Minn. Sent. Guidelines 2.B.5.b (2016). This clarification further supports the conclusion that "current" actually means "when the current Minnesota offense was committed ." Minn. Sent. Guidelines 2.B.5.b (2016) (emphasis added). If "current" meant "now," as Scovel argues, that would mean "when the current Minnesota offense is sentenced ," a definition that the amended Guidelines 2.B.5.b rejects. See id. It follows that the use of "current" in Guidelines 2.B.7.a should be given the same meaning-"when the current Minnesota offense was committed." Id.
Notably, no change was made to comment 2.B.502 to rephrase "current Minnesota offense definitions" to say "Minnesota offense definitions in effect when the current offense was committed." See Minn. Sent. Guidelines cmt. 2.B.502 (2016). That the Commission left comment 2.B.502 as saying "current Minnesota offense definitions" while simultaneously amending the neighboring, above-the-line text in Guidelines 2.B.5.b to read "offense definitions in effect when the current Minnesota offense was committed" suggests that the word "current" is shorthand for "when the current Minnesota offense was committed." Cf. State v. Beckman , 296 Minn. 443, 209 N.W.2d 402, 403-04 (1973) (discussing how the statutes were "arguably incomplete or confusing" and "demonstrate[d a] legislative oversight," but resolving the confusion in light of the Legislature's subsequent statutory amendment).
Moreover, when the Commission made the 2016 changes to clarify the text of Guidelines 2.B.5.b, it remarked that this was a clarifying amendment to make clear "that the policy for classifying non-Minnesota prior offenses is, like the policy for classifying Minnesota prior offenses , based on offense definitions and sentencing policies in effect when the current Minnesota offense was committed ." Minnesota Sentencing Guidelines Commission, Adopted Modifications to the Sentencing Guidelines and Commentary 23 (Aug. 2016) (emphasis added).[12] These *558 pseudo-legislative materials from the Commission, together with the amendments to the text of the Guidelines, demonstrate that the Commission thought that Guidelines 2.B.7.a already provided that Minnesota prior offenses were classified "based on offense definitions ... in effect when the current Minnesota offense was committed." Id.
In light of the whole-statute canon, the shared history between Guidelines 2.B.5 and 2.B.7, and the subsequent legislative history, we conclude that "current" in Guidelines 2.B.7.a must mean "in effect when the current Minnesota offense was committed."
This interpretation is more reasonable than the dictionary definition of "current" because it avoids a conflict between Guidelines 2.B.5.b and 2.B.7.a by interpreting the two provisions hand-in-hand. See Jones , 848 N.W.2d at 537 ("When there is an apparent conflict between two provisions, we first attempt to construe the provisions to give effect to both."). In this case, blind adherence to dictionary definitions would thwart the primary goal of statutory interpretation, which is to effectuate legislative intent. See Auto Owners Ins. Co. v. Perry , 749 N.W.2d 324, 326 (Minn. 2008) ("The paramount goal of statutory interpretation is to ascertain and effectuate the intention of the [L]egislature." (citation omitted) (internal quotation marks omitted) ). We must not cling too tightly to dictionaries, being mindful that we seek to ascertain the meaning that the Commission intended, not the meaning that lexicographers advance. See Minn. Stat. § 645.16 (2016) ("The object of all interpretation ... is to ascertain ... the intention of the [L]egislature.").
This interpretation is also consistent with the fact that the current offense date controls a multitude of other inquiries that the Guidelines require. See, e.g. , Minn. Sent. Guidelines 2.B.1.c (using "the date of the current offense" for the 15-year felony decay rule); Minn. Sent. Guidelines 2.B.113 (same).[13] In fact, it appears that the only time that the date of sentencing controls, rather than the date of the current offense, is the inquiry regarding whether a prior conviction is final. See Minn. Sent. Guidelines 2.B.1.g ("Assign no weight to an offense for which a judgment of guilty has not been entered before the current sentencing...."); see also Minn. Sent. Guidelines cmt. 2.B.114; Minn. Sent. Guidelines 2.B.3.a. And in that circumstance, the Guidelines Commission expressly used the phrase "current sentencing."
Moreover, the Guidelines often use the adverb "currently" to refer to the current edition of the Guidelines that controls for sentencing the current offense. See, e.g. , Minn. Sent. Guidelines cmt. 2.B.105 ("This policy also applies to offenses that are currently assigned a severity level ranking *559 ....").[14] Indeed, the cover of each annual iteration of the Sentencing Guidelines states: "The Sentencing Guidelines are effective August 1 ... and determine the presumptive sentence for felony offenses committed on or after the effective date." (Emphasis added.) All this suggests that the Commission uses the word "current," along with present-tense verbs, even when it is referring to a moment in the past-the time the current offense was committed.
Finally, this interpretation is consistent with the objective of the Guidelines, and our objective when interpreting the same, to "maintain uniformity, proportionality, rationality, and predictability in sentencing." State v. Shattuck , 704 N.W.2d 131, 144 (Minn. 2005) (quoting Minn. Stat. § 244.09, subd. 5 (2004) ); see also id. (deciding the case "[i]n light of the overriding purposes of the Sentencing Guidelines"). By interpreting Guidelines 2.B.7 to be consistent with Guidelines 2.B.5, Scovel and other offenders with in-state prior offenses will receive the same treatment as offenders with out-of-state prior offenses. See Minn. Sent. Guidelines 1.A ("Equity in sentencing requires that ... convicted felons with similar relevant sentencing criteria should receive similar sanctions...."); see also State v. Maurstad , 733 N.W.2d 141, 147 (Minn. 2007) ("In order to effectuate the ... policy [of the Guidelines], sentences must be based on correct criminal history scores ... [that] ensure that defendants with similar criminal histories receive approximately equal sanctions for the same offense."). Moreover, it is easier for district courts to uniformly apply the law (and Guidelines) in effect at the time the current offense was committed, rather than having the prior-offense inquiry hinge on the time of sentencing the current offense.
We have also said that we strive to interpret the Guidelines to avoid systematic "manipulation" of the Guidelines by the offender. Minn. Sent. Guidelines cmt. 2.B.108, cmt. 2.B.110, cmt. 2.B.305; see also State v. Zeimet , 696 N.W.2d 791, 796-97 (Minn. 2005) ("This court has also issued decisions aimed at avoiding potential for manipulation in the sentencing context."). If we were to decide that "current" means "at the time of sentencing the current offense," then future offenders could strategically wait to accept a plea offer until after the Legislature's changes to crime elements go into effect. By making the date of the current offense controlling, there is no possibility for manipulation. See also State v. Folley , 438 N.W.2d 372, 374 (Minn. 1989) ("[T]he total amount of time a defendant is incarcerated should not turn on matters that are subject to manipulation....").
We therefore hold that under Minnesota Sentencing Guidelines 2.B.7.a, the classification of prior offenses for the purpose of calculating a defendant's criminal history score is based on "current Minnesota offense definitions ... and sentencing policies," which means Minnesota offense definitions and sentencing policies in effect when the defendant committed the current crime. Because Scovel's prior offense was still a felony at the time he committed the current offense in March 2016, we conclude that he properly received a felony criminal history point.[15]
*560 CONCLUSION
Based on the foregoing analysis, we affirm the decision of the court of appeals.
Affirmed.
HUDSON, J., took no part in the consideration or decision of this case.

The record does not reveal the type or weight of drug that Scovel possessed. The State does not dispute, however, that whatever drug type and quantity that Scovel possessed would qualify for reclassification as a gross misdemeanor.

Specifically, under section 7 of the DSRA, "[a] person convicted" of fifth-degree possession of a controlled substance who does not have a prior controlled-substance-crime conviction "is guilty of a gross misdemeanor if: (1) the amount of the controlled substance possessed, other than heroin, is less than 0.25 grams or one dosage unit or less if the controlled substance was possessed in dosage units; or (2) the controlled substance possessed is heroin and the amount possessed is less than 0.05 grams." Act of May 22, 2016, ch. 160, § 7, 2016 Minn. Laws at 584-85 (codified at Minn. Stat. § 152.025, subd. 4(a) (2016) ).

The district court made no express reference to the Sentencing Guidelines or the DSRA when sentencing Scovel. Based on the sentencing worksheet and the transcript of the sentencing hearing, however, it is clear that the district court assigned Scovel 0.5 points for his 2007 felony conviction.

This opinion cites to the 2015 Minnesota Sentencing Guidelines because that was the version in effect at the time that Scovel committed the current offense in March 2016. See Minn. Sent. Guidelines 2 (providing that an offender's presumptive sentence "is determined by the Sentencing Guidelines in effect on the date of the conviction offense").

A defendant cannot forfeit appellate review of his criminal history score. See State v. Maurstad , 733 N.W.2d 141, 147-48 (Minn. 2007) (stating that "because a sentence based on an incorrect criminal history score is an illegal sentence," a defendant cannot waive or forfeit appellate review of his criminal history score); see also Minn. R. Crim. P. 27.03, subd. 9 ("The court may at any time correct a sentence not authorized by law.").

If Scovel's 2007 conviction had been reduced to a gross misdemeanor, it would have added no criminal history "points" because he already had more than four criminal history "units" for prior misdemeanor and gross misdemeanor offenses. See Minn. Sent. Guidelines 2.B.3 (providing that four criminal history units "equal[s] one criminal history point" and "an offender cannot receive more than one point for prior misdemeanor or gross misdemeanor convictions"). His criminal history score would have totaled 1.5, which is rounded down to 1 under Minn. Sent. Guidelines 2.B.1.i. The presumptive range under the 2015 Guidelines for a second-degree-sale offense with 1 criminal history point was 50 to 69 months, rather than the 58-to-81-month range under which Scovel was sentenced to 70 months.

The parties' briefs are, in Scovel's words, "two ships passing in the night." See Henry W. Longfellow , Tales of a Wayside Inn 237 "The Theologian's Tale" (Houghton, Mifflin & Co. 1888) (1863). The State's brief primarily focuses on the DSRA, arguing that Scovel's 2007 felony conviction became final long before the Legislature reclassified the offense. By contrast, Scovel primarily relies on Guidelines 2.B.7.a.
Acknowledging that the relevant provisions of the DSRA apply to crimes committed on or after August 1, 2016, Scovel does not claim that he is entitled to be resentenced for his 2007 felony conviction. See State v. Otto , 899 N.W.2d 501, 504 (Minn. 2017). According to Scovel, the effective date of section 7 of the DSRA is only tangentially related to the issue at hand. We agree. The key to this case is found in the relevant provision of the Minnesota Sentencing Guidelines. See State v. Zeimet , 696 N.W.2d 791, 796 (Minn. 2005) ("[I]t is up to the Minnesota Sentencing Guidelines Commission to determine how an offender's prior record will be used in assessing the number of criminal history points...."); see also State v. Olson , 325 N.W.2d 13, 17-18 (Minn. 1982) ("The power to define the conduct which constitutes a criminal offense and to fix the punishment for such conduct is vested in the [L]egislature.").

The 2015 version of Guidelines 2.B.5.b does not specify whether it is the offense definitions "in effect when the [current ] offense was committed" (here March 2016) or "in effect when the [prior ] offense was committed" (here 2007). At first, this seems like yet another ambiguity. But in light of comment 2.B.502, which paraphrases Guidelines 2.B.5.b's text using the word "current," it becomes clear that Guidelines 2.B.5.b can only reasonably be read as "[t]he offense definitions in effect when the [current Minnesota ] offense was committed." It would be illogical for the Commission to have meant "in effect when the prior offense was committed" in conjunction with comment 2.B.502's use of the word "current." Put differently, although "current" could reasonably mean March 2016 (the time the current offense was committed) or September 2016 (the time the current offense was sentenced), "current" could not reasonably mean 2007 (the time the prior Minnesota offense was committed).

See Minn. Sent. Guidelines II.B (1980); Minn. Sent. Guidelines II.B, cmt. 503 (1981); Minn. Sent. Guidelines II.B.5, cmts. II.B.503-.504 (1983); Minn. Sent. Guidelines cmt. II.B.04, II.B.5, cmts. II.B.502-.503 (1998); Minn. Sent. Guidelines II.B, II.B.5, cmt. II.B.502 (2006); Minn. Sent. Guidelines 2.B.5, cmt. 2.B.502, 2.B.7.a (2012); Minn. Sent. Guidelines 2.B.5.b, cmt. 2.B.502, 2.B.7.a (2016).

See, e.g. , Minn. Sent. Guidelines 2.B.7.a, cmt. 2.B.502 (2012); Minn. Sent. Guidelines II.B, cmt. II.B.502 (2006); Minn. Sent. Guidelines cmt. II.B.04, cmt. II.B.502 (1998).

See also County of Washington v. Gunther , 452 U.S. 161, 194 n.6, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) (Rehnquist, J., dissenting) ("There is undoubtedly some danger in relying on subsequent legislative history. But that does not mean that such subsequent legislative history is wholly irrelevant...."); Herrly v. Muzik , 374 N.W.2d 275, 279 (Minn. 1985) (noting that "subsequent legislative history as a source for divining earlier [legislative] intent must be employed with caution," but that "we cannot blind ourselves to ... the resultant 1985 amendments to section 340.95").

Shortly before oral argument, the State filed citations to supplemental authorities, calling to the court's attention publicly available materials from the Commission's 2016 deliberations. See Minn. R. Civ. App. P. 128.05 (allowing citation to "pertinent and significant authorities" that come to a party's attention after the party's brief is filed). Scovel moved to strike this submission as an improper use of Rule 128.05 because the State offered the supplemental authorities only to respond to arguments made in Scovel's principal and reply briefs. The State's use of Rule 128.05 in this context is debatable, particularly given the timing of the citation and that over 300 pages of material were cited, but we have previously considered the Commission's publicly available materials in construing the Guidelines, see State v. Williams , 771 N.W.2d 514, 523 (Minn. 2009). We therefore deny the motion to strike.

See also Minn. Sent. Guidelines 2.B.3.e (using "the date of the current offense" for the 10-year misdemeanor and gross misdemeanor decay rule); Minn. Sent. Guidelines 2.C.3.b ("If ... there was a previous conviction for a felony burglary before the current offense occurred, the presumptive disposition is commitment."); Minn. Sent. Guidelines 2.C.3.d ("[I]f, prior to the commission of the current offense, the offender had a previous [DWI] conviction ... the presumptive disposition is commitment.").

See also Minn. Sent. Guidelines cmt. 2.B.106 ("If an offense has been redefined by the Legislature, base the appropriate severity level on how the prior felony offense would currently be ranked...."); Minn. Sent. Guidelines 2.B.2.b(2) (assigning two custody status points for "an offense currently found on the Sex Offender Grid"); cf. Minn. Sent. Guidelines 2 (stating that "[t]he presumptive sentence ... is determined by the Sentencing Guidelines in effect on the date of the conviction offense").

The parties offer competing interpretations of the phrase "offense definitions" as used in Minn. Sent. Guidelines 2.B.7.a. Scovel argues that "offense definitions" refers to the substantive, element-based definitions of crimes (e.g., the definition of fifth-degree possession in Minn. Stat. § 152.025, subds. 2, 4 ). The State, by contrast, favors an interpretation of "offense definitions" that is synonymous with the parenthetical citing to the crime-level definitions in Minn. Stat. § 609.02, subds. 2-4a (e.g., a "felony" is "any crime for which a sentence of imprisonment for more than one year may be imposed").
We need not decide which of these competing approaches wins out, because under either interpretation, Scovel properly received a criminal history point. See Navarre v. S. Washington Cty. Schs. , 652 N.W.2d 9, 32 (Minn. 2002) ("[W]e need not decide ... issues if they are not dispositive to our decision."). Under the first interpretation, his prior offense was still a crime classified as a felony based on the Legislature's definition of fifth-degree possession at the time he committed this current offense (March 2016, several months before the effective date of the DSRA). And under the second interpretation, Scovel's prior offense, Minn. Stat. § 152.025, subds. 2-3 (2006), was a crime that was punishable by over a year in prison, see Minn. Stat. § 609.02, subd. 2 (2016).