GILDEA, Chief Justice.
This case presents the question of whether, under section 2.B.7.a of the Minnesota Sentencing Guidelines, the classification of a prior offense as a gross misdemeanor or felony is determined by reference to the statute setting forth the elements of the crime, or by reference to Minn. Stat. § 609.02 (2018) (defining "felony" and "gross misdemeanor"). Appellant Donald Albert Strobel was convicted of first-degree sale of a controlled substance. The district court sentenced Strobel using a criminal-history score of five. Strobel appealed to the court of appeals, arguing that his criminal-history score was improperly calculated. Specifically, he argued that the district court had misapplied Minn. Sent. Guidelines § 2.B.7.a and improperly assigned one-half of a felony point for one of his prior convictions. The court of appeals agreed with Strobel's interpretation of the Guidelines and concluded that the State did not carry its burden to prove Strobel's criminal-history score. The court therefore reversed Strobel's sentence, and remanded to the district court for a new sentencing hearing. Because the court of appeals properly determined that the classification of a prior offense is determined by reference to the statute setting forth the elements of the crime, we affirm.
*305 FACTS
This appeal involves two of Strobel's controlled-substance-crime convictions: one in 2012 (the "prior offense") and the current offense, which Strobel committed in 2016. The prior offense is relevant here because it was used to calculate Strobel's criminal-history score in sentencing for his current offense.
In 2012, Strobel was convicted of the prior offense: fifth-degree possession of a controlled substance, in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2014). That statute prohibited the possession of "one or more mixtures containing a controlled substance classified in Schedule I, II, III, or IV, except a small amount of marijuana."[1] The statutory maximum sentence for the offense was 5 years in prison, Minn. Stat. § 152.025, subd. 2(a), but the presumptive guideline sentence for the offense, given Strobel's criminal-history score, was a stayed 15-month sentence. Minn. Sent. Guidelines 4-5 (2011). The district court stayed execution of a 15-month sentence and placed Strobel on probation for 5 years.
Four years later, the Legislature enacted the 2016 Drug Sentencing Reform Act (DSRA). See Act of May 22, 2016, ch. 160, 2016 Minn. Laws 576. As we explained in State v. Scovel , "under section 7 of the DSRA, fifth-degree sale of a controlled substance remains a felony, but some first-time fifth-degree possession offenses are now classified as gross misdemeanors." 916 N.W.2d 550, 552 (Minn. 2018) ; see also Act of May 22, 2016, ch. 160, § 7, 2016 Minn. Laws 576, 583-85 (codified at Minn. Stat. § 152.025 (2016) ). Section 7 of the DSRA became effective on August 1, 2016, and "applies to crimes committed on or after that date." Act of May 22, 2016, ch. 160, § 7, 2016 Minn. Laws 576, 585.
Strobel committed the current offense in 2016. Police arrested him in December for selling methamphetamine to a confidential informant. Police also found methamphetamine in the police car where Strobel had been placed following his arrest. Strobel was charged with first-degree sale under Minn. Stat. § 152.021, subd. 1(2)(ii) (2018), found guilty following a jury trial, and convicted.[2] The district court sentenced Strobel to 115 months in prison, the presumptive guideline sentence for a defendant with a criminal-history score of five. Strobel's criminal-history score included one-half of a felony point for the 2012 prior offense.[3]
Strobel did not challenge the criminal-history-score calculation in the district court. But he did challenge it on appeal to the court of appeals. See Scovel , 916 N.W.2d at 553 n.5 ("A defendant cannot forfeit appellate review of his criminal history score."); State v. Maurstad , 733 N.W.2d 141, 147 (Minn. 2007) (noting that a defendant can neither waive nor forfeit *306 appellate review of his criminal-history score "because a sentence based on an incorrect criminal history score is an illegal sentence"); see also Minn. R. Crim. P. 27.03, subd. 9 ("The court may at any time correct a sentence not authorized by law.").[4]
Specifically, Strobel argued that the district court improperly assigned one-half of a felony point for the 2012 prior offense. Strobel contended that, under Minnesota Sentencing Guidelines § 2.B.7.a, the district court must apply the element-based "offense definitions" that were in effect when he committed the 2016 offense in order to determine the point value for the prior offense. Strobel relied on the DSRA, which changed the classification of certain fifth-degree drug offenses from felonies to gross misdemeanors. Strobel argued that, because his prior offense would be a gross misdemeanor after the effective date of the DSRA, the district court erred in classifying it as a felony. Compare Minn. Stat. § 152.025, subd. 4(a) (2018) (providing that "[a] person convicted under the provisions of subdivision 2, clause (1) ... is guilty of a gross misdemeanor if: (1) the amount of the controlled substance possessed, other than heroin, is less than 0.25 grams or one dosage unit or less if the controlled substance was possessed in dosage units"), with Minn. Stat. § 152.025, subd. 2 (2012) (providing no gross-misdemeanor exception for possession).[5]
The court of appeals agreed with Strobel's interpretation of the Guidelines. Concluding that "the [S]tate failed to prove that Strobel's 2012 fifth-degree controlled-substance-possession offense should be classified as a felony for purposes of his criminal-history-score calculation," the court of appeals remanded to the district court for resentencing. State v. Strobel , 921 N.W.2d 563, 577 (Minn. App. 2018). On remand, the court of appeals instructed the district court to permit the State "to develop the record regarding the type and amount of controlled substance underlying Strobel's 2012 conviction." Id. (citing State v. Outlaw , 748 N.W.2d 349, 356 (Minn. App. 2008), rev. denied (Minn. July 15, 2008) (remanding with similar instructions where the defendant "did not object to the district court's determination that his out-of-state convictions were felonies")).
We granted the State's petition for review.
ANALYSIS
On appeal, the parties debate the proper interpretation of Minn. Sent. Guidelines § 2.B.7.a, titled "Classification of Prior Offense." Interpretation of the Minnesota Sentencing Guidelines is a question of law that we review de novo. Scovel , 916 N.W.2d at 554 ; State v. Washington , 908 N.W.2d 601, 606 (Minn. 2018). We apply the same principles of interpretation to the Guidelines as we apply to *307 statutes, including the canons of statutory interpretation set forth in Minn. Stat. § 645.08 (2018). Scovel , 916 N.W.2d at 554 ; Washington , 908 N.W.2d at 608. We read the Guidelines "as a whole and interpret each section in light of the surrounding sections." State v. Kirby , 899 N.W.2d 485, 493 (Minn. 2017). If the language of the Guidelines "is plain and unambiguous, it is presumed to manifest the intent of the Minnesota Sentencing Guidelines Commission." Scovel , 916 N.W.2d at 554-55 ; State v. Campbell , 814 N.W.2d 1, 4 (Minn. 2012). We consider other factors to determine the Commission's intent only if the language of the Guidelines is "subject to more than one reasonable interpretation." Campbell , 814 N.W.2d at 4 ; see Scovel , 916 N.W.2d at 555.
A.
Section 2.B.7.a provides that, when calculating a criminal-history score, "[t]he classification of a prior offense as a petty misdemeanor, misdemeanor, gross misdemeanor, or felony is determined by current Minnesota offense definitions (see Minn. Stat. § 609.02, subds. 2-4a ) and sentencing policies." Minn. Sent. Guidelines 2.B.7.a.[6] Each party contends that the plain language of section 2.B.7.a unambiguously supports its position.
The State contends that "offense definitions" is synonymous with the parenthetical citation in section 2.B.7.a to Minn. Stat. § 609.02, subd. 2, which provides that a felony is any "crime for which a sentence of imprisonment for more than one year may be imposed." Because Strobel received a sentence for the 2012 prior offense that was still a felony sentence under Minn. Stat. § 609.02 in 2016, the State contends that Strobel's prior offense may be classified as a felony under the Guidelines. Accordingly, the State argues that one-half of a felony point was properly added to Strobel's criminal-history score for the prior offense. The State also argues that because, hypothetically, a felony sentence could still be imposed for Strobel's 2012 conduct as of 2016, Strobel's prior offense may be classified as a felony under the Guidelines.[7]
For his part, Strobel contends that "offense definitions" means the element-based definition of a crime under the statute setting forth a particular offense. Here, that statute would be Minn. Stat. § 152.025 (2018). Because he committed the 2016 offense after the DSRA's modification of the elements of possession crimes went into effect, Strobel contends that his 2012 prior offense should be classified for criminal-history-score purposes by applying the DSRA-revised elements of Minn. Stat. § 152.025 (2018). Under those revised elements, the type and amount of the controlled substance the defendant possesses determines whether the crime was a felony or gross misdemeanor. Id. , subd. 4(a). The State did not prove the weight of drugs involved in the prior offense, and Strobel therefore contends that one-half of a point was improperly added to his criminal-history score.[8]
*308 B.
With the parties' competing interpretations in mind, we turn back to the language at issue. Under section 2.B.7.a, the "classification" of a prior offense is determined by current "offense definitions." Two terms are particularly relevant to the parties' arguments: "classification" and "offense definitions." Because these terms are not defined in the Guidelines, we look to dictionary definitions. State v. Thonesavanh , 904 N.W.2d 432, 436 (Minn. 2017).
The dictionary definition of "offense" is a legal infraction or a crime. See, e.g. , The American Heritage Dictionary of the English Language 1222 (5th ed. 2011) (defining "offense," in relevant part, as "[a] transgression of law; a crime"); Webster's Third New International Dictionary 1566 (1961) (defining "offense," in relevant part, as "an infraction of law: crime, misdemeanor ... sometimes : a misdemeanor not indictable but subject to summary punishment"). And the terms "definition" and "classification" are respectively defined as "the meaning of a word or phrase," see, e.g. , Webster's Third New International Dictionary 592 (defining "definition," in relevant part, as "a statement of the meaning of a word or word group" or "the action or process of stating the meaning of a word or word group"), and "the act of distributing into groups, classes, or families," see, e.g. , id. at 417 (defining "classification," in relevant part, as "the act or a method of classifying," "the act or a method of distributing into groups, classes, or families," "an assigning to a proper class," or "sorting."). The dictionary definitions reflect a common and approved usage of the phrase "offense definitions" that is consistent with Strobel's element-based interpretation. Statutes like Minn. Stat. § 152.025, after all, describe what conduct is proscribed by law and therefore what conduct constitutes a particular crime.
By contrast, the State's interpretation essentially treats "classification" the same as "offense definitions." The term "classification," however, evokes a class or category of crimes or legal infractions. Statutes like Minn. Stat. § 609.02, subds. 2-4a use "felony" and "gross misdemeanor," which are more categorical than particular. The State's interpretation effectively substitutes the phrase "offense classification" for the phrase "offense definitions." Under the State's interpretation, section 2.B.7.a would be rewritten to read: "The classification of a prior offense as a petty misdemeanor, misdemeanor, gross misdemeanor, or felony is determined by current Minnesota offense classifications (see Minn. Stat. § 609.02, subds. 2-4a ) and sentencing policies." Such an interpretation treats the words "definitions" and "classification" as synonymous. But we assume that when the drafters use different terms, they mean different things. Dereje v. State , 837 N.W.2d 714, 720 (Minn. 2013) (noting that we assume that when different words are used in the same context, the words have different meanings).
Moreover, the Commission used the word "offense" twice in the first sentence of section 2.B.7.a: "[t]he classification of a prior offense as a ... gross misdemeanor[ ] or felony is determined by current *309 Minnesota offense definitions ..." Minn. Sent. Guidelines § 2.B.7.a (emphasis added). The State's proffered interpretation would mean that within the first sentence of section 2.B.7.a, the first use of "offense" means one thing-a particular crime that occurred in the past-while the second use of "offense" means another thing-a whole category of crimes into which a prior offense might fall. But we generally seek to interpret the same word consistently within a single provision. See, e.g. , Clark v. Pawlenty , 755 N.W.2d 293, 306 (Minn. 2008) (declining to interpret the word "successor" differently in two different sections of the Minnesota Constitution); Akers v. Akers , 233 Minn. 133, 46 N.W.2d 87, 92 (1951) (concluding that the same word used in different subdivisions of a statute must be interpreted to have the same meaning).
The State's reliance on the citation in section 2.B.7.a to Minn. Stat. § 609.02 is also unpersuasive. The State focuses on the citation of section 609.02 and contends that unless "offense definitions" is read to refer to the definitions contained in section 609.02, the citation to section 609.02 is superfluous. We disagree. Many criminal statutes list the elements of an offense and what sentence or other punishment may be imposed without specifically classifying the crimes they define as "felonies," "gross misdemeanors," or "misdemeanors." See, e.g. , Minn. Stat. § 152.021 -.024 (2018) (controlled-substance crimes in the first, second, third, and fourth degrees); Minn. Stat. § 609.50 (2018) (obstructing legal process, arrest, or firefighting); Minn. Stat. § 609.582 (2018) (burglary). As a result, one can only classify such an offense as a "felony," "gross misdemeanor," or "misdemeanor" by cross-referencing the relevant criminal statute with Minn. Stat. § 609.02 (defining terms such as "felony" by reference to the maximum or minimum punishment that can be imposed for a particular crime). The Commission's citation to section 609.02 therefore is not only not superfluous, but necessary to "classify" an offense as, for instance, a felony.
Finally, reading section 2.B.7 as a whole confirms that the State's interpretation is unreasonable. Section 2.B.7 contains two paragraphs, a and b. Minn. Sent. Guidelines 2.B.7.b, titled "Monetary Threshold," provides that "[w]hen a monetary threshold determines the offense classification, the monetary threshold in effect when the prior offense was committed, not the current threshold, determines the offense classification in calculating the criminal history score." Minn. Sent. Guidelines 2.B.7.b. Under the State's interpretation, paragraph b would do no work. There is no reason to look at the monetary thresholds under the State's interpretation because the determination of whether a prior crime is a felony would be decided, not based on the monetary threshold of the crime as paragraph b directs, but based only on whether the sentence imposed was a felony or gross misdemeanor sentence under Minn. Stat. § 609.02. Accordingly, paragraph b would be superfluous. Our obligation, however, is to give effect to both paragraphs. See State v. Spence , 768 N.W.2d 104, 108 (Minn. 2009) (noting in context of statutory interpretation, that "whenever possible we avoid statutory constructions that render words superfluous").
For all of these reasons, we conclude that the State's interpretation is not reasonable. Because Strobel's interpretation is the only reasonable interpretation of section 2.B.7.a, the provision is not ambiguous. Based on the plain language of section 2.B.7.a, the phrase "offense definitions" refers to the element-based definitions *310 of crimes.[9]
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.

The facts underlying the 2012 conviction are not part of the appellate record, and so we cannot determine the type or weight of the controlled substance that Strobel possessed.

Strobel was also charged with second-degree possession under Minn. Stat. § 152.022, subd. 2(a)(1) (2018), found guilty, and convicted. No issues were raised on appeal regarding the possession offense.

In calculating a defendant's criminal-history score, a defendant with a current offense on the drug offender grid under the Guidelines can receive one-half of a point to two points for each prior felony, depending on the severity level of the prior felony. See Minn. Sent. Guidelines § 2.B.1.a. Strobel received one-half of a felony point for the 2012 prior offense under Minn. Sent. Guidelines § 2.B.1.a, which assigns one-half of a point for offenses with a severity level of 1-2 and D1-D2. Under Minnesota Sentencing Guidelines sections 5.A and 5.B, a fifth-degree controlled-substance crime under Minn. Stat. § 152.025, subd. 4(b), is a severity level D2.

Before the court of appeals, Strobel also argued that his right to a speedy trial was violated, but the court of appeals rejected that argument. See State v. Strobel , 921 N.W.2d 563, 567 (Minn. App. 2018). We did not grant Strobel's petition for review on that issue.

Without the half-point for the prior offense, Strobel's criminal-history score would have been four and one-half points for the current first-degree sale offense. The guidelines provide that "[i]f the sum of the weights results in a partial point, the point value must be rounded down to the nearest whole number." Minn. Sent. Guidelines § 2.B.1.i. Accordingly, if the half-point for the prior offense had not been imposed, Strobel's score would have been rounded down to four. With a score of four, the presumptive sentence for the first-degree sale offense would have been 90-126 months, rather than 98-138 months, the presumptive sentence for a criminal-history score of five. See Minn. Sent. Guidelines § 4.C.

The second sentence of section 2.B.7.a deals with petty misdemeanors and is not at issue in this case.

Relying on the phrase "may be imposed" in Minn. Stat. § 609.02, subd. 2, the State argues that the operative question is whether a felony sentence may be imposed for a prior offense if the prior offense were to be resentenced as of the date of the current offense. In answering this question in the affirmative, the State observes that the DSRA is not retroactive and one of the elements the State must prove is the "jurisdictional element of date and county." This argument is unhelpful because Strobel is not asking to be resentenced for his prior offense.

In Scovel , the State and the defendant urged competing interpretations of "offense definitions" that are identical to the positions advanced by the State and Strobel, respectively, in this case. But Scovel did not resolve the question because the DSRA was not yet in effect when the crime being sentenced occurred, and the defendant, therefore, lost under either approach. See Scovel , 916 N.W.2d at 560 n.15 ("We need not decide which of these competing approaches wins out, because under either interpretation Scovel properly received a criminal history point."). Scovel held that "current" under section 2.B.7.a "means Minnesota offense definitions and sentencing policies in effect when the defendant committed the current crime." Id. at 559.

Because we resolve this issue based on the plain meaning of section 2.B.7.a, we do not address the parties' arguments regarding legislative intent, the Commission's comments, and policy considerations.