*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1709**

State of Minnesota,
Respondent,

vs.

Wayne Patrick Clements,
Appellant.

**Filed January 5, 2026**
**Reversed and remanded**
**Jesson, Judge**[*]

Carlton County District Court
File No. 09-CR-24-206

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Jeffrey L.H. Boucher, County Attorney, Carlton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Bratvold, Judge; and Jesson,

Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**JESSON**, Judge

In a postconviction petition, appellant Wayne Patrick Clements challenged his sentence for second-degree assault with a dangerous weapon. The sentence was premised, in part, on Clements's criminal-history score—a score which reflected his prior felonies. But prior felonies do not always impact one's criminal history. The Minnesota Sentencing Guidelines provide, in part, that 15 years after a felony sentence is discharged it cannot be included in a criminal-history score. Minn. Sent'g Guidelines 2.B.1.c (2023). It "decays." *Id.*

The central issue in this appeal is whether aggregated felony sentences decay individually or collectively for purposes of calculating criminal-history scores. We conclude, as did the postconviction court, that they decay individually. But because we conclude that the court used the wrong method to calculate how the individual sentences decayed in this case—leading to an erroneous criminal-history score—we reverse and remand for resentencing.

## FACTS

In July of 2024, appellant Wayne Patrick Clements pleaded guilty to one count of second-degree assault with a dangerous weapon. According to the complaint, Clements hit a resident of the Minnesota Sex Offender Program with the leg of a chair. Clements negotiated with respondent, State of Minnesota, for a fifty-month sentence in exchange for his guilty plea. At the plea hearing, both parties acknowledged that Clements's criminal-history score would be either four or five points, meaning fifty months would fall within

the presumptive sentencing guidelines range regardless.[1]  But the sentencing worksheet, submitted to the court after Clements's guilty plea but before sentencing, indicated that Clements's criminal-history score was seven, corresponding to a sentencing range of 49-68 months.

The probation officer who prepared a presentence investigation report assigned Clements two points for prior convictions for assault and terroristic threats which are not at issue here.  Clements's remaining five points were derived from five convictions for terroristic threats, all stemming from a single case.  In that case, Clements pleaded guilty to threatening five different Minnesota Sex Offender Program staff members on March 5, 2003.  The district court sentenced Clements to five consecutive sentences of one year and one day with jail credit for 468 days.  The Department of Corrections then aggregated Clements's consecutive sentences, resulting in one 75-month sentence.[2]  Based on this aggregation, the sentencing worksheet indicated that each count of terroristic threats had the same expiration date—June 9, 2009.  Using this expiration date, none of Clements's five counts of terroristic threats had decayed, and consequently the worksheet stated that Clements's criminal-history score included a full point for each count.

---

[1] The presumptive sentencing range for a criminal-history score of four is 39 to 54 months and the presumptive sentencing range for a criminal-history score of five is 44 to 61 months.  Minn. Sent'g Guidelines 4.A (Supp. 2023).

[2] Sentence aggregation is the process by which the Department of Corrections aggregates multiple "sentence durations into a single fixed sentence."  Minn. Sent'g Guidelines 2.F (Supp. 2023).  "The aggregate term of imprisonment must be served before the aggregate supervised release period."  *Id.*

In August 2024, in accordance with the plea agreement, the district court sentenced Clements to 50 months in prison. Pursuant to Minnesota Rule of Criminal Procedure 28.02, subdivision 4(4), Clements filed a direct appeal but requested remand because postconviction proceedings were necessary to develop a factual record of the calculation of Clements's criminal-history score. We remanded to the district court for further proceedings. Clements then filed his petition for relief with the postconviction court, arguing that his criminal-history score was incorrectly calculated because it included five points for five counts of terroristic threats, at least four of which had decayed.

In its order denying Clements's petition for postconviction relief, the court acknowledged an error in the district court's calculation of Clements's criminal-history score, which had included all five counts of terroristic threats. The postconviction court concluded that Clements's sentences decayed individually, but because Clements's sentences were aggregated, his first sentence did not decay until *all* incarceration periods *and* the first supervised release period were served. Under this method, two of Clements's terroristic-threat convictions had decayed by the time of his current offense. Accordingly, the postconviction court assigned a new criminal-history score of five points, reduced from seven. But because the parties contemplated a criminal-history score of four or five, which is consistent with the revised criminal-history score, the postconviction court concluded Clements's sentence was not illegal and so refused to resentence Clements.

We dissolved the stay of this appeal and Clements now argues that his sentence remains illegal.

4

**DECISION**

The central issue before us is whether Clements's prior felonies decay individually or collectively after a period of supervised release. If they decay collectively, then Clements's criminal-history score is seven points, as none of his five counts of terroristic threats have yet decayed. But if they decay individually, then we must address the issue of *how* and *when* they decay.

Our review of these issues requires interpretation of the Minnesota Sentencing Guidelines, which presents a question of law that we review de novo. *State v. Scovel*, 916 N.W.2d 550, 554 (Minn. 2018). We begin that review with a brief discussion of the Guidelines before addressing whether Clements's prior felony sentences decay individually and, if so, how.

The Minnesota Sentencing Guidelines exist "to establish rational and consistent sentencing standards that promote public safety, reduce sentencing disparity, and ensure that the sanctions imposed for felony convictions are proportional to the severity of the conviction offense and the offender's criminal history." Minn. Sent'g Guidelines 1.A (2023) (articulating the statement of purpose and principles of the Minnesota Sentencing Guidelines). The Guidelines provide a presumptive sentence and sentencing range for an offense given a criminal-history score. Minn. Sent'g Guidelines 2.B (2023). Criminal-history scores are calculated from "the sum of points from eligible: prior felonies; custody status at the time of the offense; prior misdemeanors and gross misdemeanors; and prior juvenile adjudications." *Id.* But fifteen years after a felony is discharged, it decays and

cannot be included in a defendant's criminal-history score. Minn. Sent'g Guidelines 2.B.1.c. As the Guidelines explain,

> a prior felony sentence or stay of imposition following a felony conviction must not be used if all the following, to the extent applicable, occurred before the date of the current offense:
> (1) the prior felony sentence or stay of imposition expired or was discharged;
> (2) a period of fifteen years elapsed after the date of the initial sentence following the prior conviction; and
> (3) if the prior felony sentence was executed, a period of *fifteen years elapsed after the date of expiration of the sentence*.

*Id.* (emphasis added).

In a separate section, the sentencing guidelines also direct the Department of Corrections to aggregate multiple consecutive sentences executed simultaneously by the same court into a single fixed sentence. Minn. Sent'g Guidelines 2.F. Under this process, the offender serves all of the aggregate terms of imprisonment first, then the offender serves all the aggregate terms of supervised release. *Id.* Once aggregated, "[t]he two-thirds terms of imprisonment are aggregated and served consecutively; then, the one-third supervised release terms are aggregated and served consecutively as well." Minn. Sent'g Guidelines cmt. 2.F.02 (2023).

With this framework in mind, we turn to whether the consecutive sentences from Clements's prior felonies decay individually or collectively. The postconviction court concluded that "despite the aggregation requirement, each felony sentence is unique and should decay individually." We agree. Once an individual has served the full duration of an executed sentence, that sentence expires and begins to decay. Minn. Sent'g Guidelines

6

2.B.1.c. Aggregation by the Department of Corrections has no bearing on this process; it is solely for purposes of administering the consecutive sentences and does not alter their character as discrete sentences that expire and decay individually. This dichotomy reflects the separate roles of the district court and the Department of Corrections. The decision to impose a consecutive or concurrent sentence rests squarely with the district court and may not be delegated to the Department of Corrections. *See State v. Ford*, 539 N.W.2d 214, 230 (Minn. 1995) (stating that the discretionary determination of whether multiple sentences should run concurrently or consecutively may not be delegated to the Department of Corrections). But the aggregation process itself is the "role of the commissioner of corrections, not the district court." *State v. Schaefer-Bonovsky*, No. A18-1908, 2019 WL 5884559, at *2 (Minn. App. Nov. 12, 2019).[3]

This conclusion regarding individual decay does not end our analysis. We must determine how the sentences decay. Here, the postconviction court began by treating each of Clements's felonies as having two distinct periods: an incarceration period and a supervised release period. And the court determined that each sentence expires individually upon the completion of the *full* aggregated period of incarceration *and* the specific period of supervised release for that particular sentence. For instance, under this method, Count I would expire after Clements served the period of incarceration for all five counts *and* the period of supervised release for Count I, at which time the supervised release

---

[3] Nonprecedential opinions are not binding authority but may be cited for their persuasive value. Minn. R. Civ. App. P. 136.01, subd. 1(c).

for Count II would begin. Using this method, the postconviction court concluded that Clements's criminal-history score was five points.

We disagree. Aggregating all of the imprisonment portions of the consecutive sentences and setting a decay date only after the supervised release attributed to the individual felony sentences does not accord the sentences true individual treatment. The appropriate method for criminal-history score calculation treats individual consecutive sentences as a whole, such that a sentence is deemed to have expired upon completion of the pronounced duration and without separating its incarceration and supervision periods.[4] And once an entire sentence has expired, it starts to decay and the service of any consecutive sentence begins at that same time, irrespective of how these sentences are actually administered by the Department of Corrections. This method, we conclude, is the appropriate approach for calculating the decay of felony sentences which are imposed consecutively.

Using this approach, Count I of Clements's prior sentences would have expired on June 7, 2005, and would have decayed exactly fifteen years later, on June 7, 2020. The

---

[4] Our method is consistent with one of the methods proposed by Clements on appeal. We further note that this method was not proposed by Clements during the postconviction proceedings. Clements also proposed two other methods for calculating his criminal-history score. Under the second method proposed by Clements, he requests that "the 2004 case [] be treated as a single sentence and only one point imposed" because "the Warrant of Commitment appears to indicate that this was treated as a single sentence." Because Clements offers no other authority for this conclusion, and because we conclude here that each of Clements's sentences decays individually, we decline to adopt this approach. Under the third method proposed by Clements, he suggests an approach wherein each period of imprisonment runs consecutively, but the periods of supervised release run concurrently after the conclusion of the first imprisonment date. Because we conclude that each sentence runs consecutively in its entirety, we also decline to adopt this approach.

8

sentence for Count II would then have begun on June 7, 2005, and expired on June 8, 2006. Under this method, the sentences for Counts I-IV decayed before the date of the current offense, October 4, 2023. Clements should therefore have received a single point for his sentence on Count V, for a total criminal-history score of three.

To persuade us otherwise, the state argues that Clements's criminal-history score should instead be seven, as the original sentencing worksheet provided. Under the state's preferred method, the district court would treat all five aggregated sentences as expiring on the date that the entire aggregated sentence is discharged. For the purposes of calculating Clements's sentence, this would result in all five points decaying fifteen years after June 9, 2009. Because June 9, 2024, is after the offense date of October 4, 2023, none of Clements's five sentences would have decayed under this method, and Clements would receive five points for his terroristic-threat sentences, for a total of seven points. We remain unpersuaded. This approach is premised on the collective decay of the aggregated sentences, which we—like the postconviction court—reject for the reasons addressed above.

Nor are we persuaded by the state's contention that our approach "ignores the plain and mandatory language of the [g]uidelines" requiring the Department of Corrections to aggregate each sentence. The state is correct in noting that the Department of Corrections is required to aggregate any consecutively executed sentences into a single fixed sentence. Minn. Sent'g Guidelines 2.F. But we emphasize here again that those guidelines are for

9

purposes of administering consecutive sentences and have no bearing on when an individual sentence expires for purpose of calculating criminal-history scores. *Id.*[5]

Finally, the state contends that we should decline to adopt Clements's recommendation because "it requires credit for service of supervised release at a time when the term of imprisonment is not yet complete." We disagree. Simply because Clements has additional sentences yet to be served, this does not mean he should not receive credit for sentences he has already served.[6]

In sum, we conclude that sentences decay individually and should not be aggregated for the purposes of calculating criminal-history scores. The postconviction court here determined that Clements's criminal-history score was five points based on an erroneous conclusion that it must "begin[] decay at the expiration of the aggregated sentence." But the aggregation of a sentence is irrelevant for the purposes of calculation of criminal-history scores. Accordingly, Clements's criminal-history score should be calculated at three points. And because "a sentence based on an erroneous criminal[-history] score is an

---

[5] In the alternative, the state invites us to adopt the method for calculating criminal-history scores used by the postconviction court, which we reject for the reasons set out above.

[6] Clements also argues that the postconviction court abused its discretion by refusing to resentence Clements based on his revised criminal-history score, and similarly, that the postconviction court erred in denying his request to withdraw his plea agreement. Because we conclude that Clements should be resentenced based on a criminal-history score of three, we decline to reach these issues. Nor do we address the claim in Clements's pro se supplemental brief in which he requests that his charges and sentence "be reduced." The brief does not state a basis for relief, makes no legal arguments, and cites to no authority. This court does "not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority." *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008). We therefore conclude Clements's claims are forfeited. *State v. Reek*, 942 N.W.2d 148, 166 (Minn. 2020).

illegal sentence," we reverse and remand for resentencing with the correct criminal-history score of three. *State v. Maurstad*, 733 N.W.2d 141, 146 (Minn. 2007).

**Reversed and remanded**.